**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT MICHIGAN**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. <u>1:13-cv-00162-RJJ</u> |
| | ) | |
| v. | ) | |
| | ) | |
| DON BUI a/k/a HUY H. BUI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby moves for the entry of an order granting summary judgment in Plaintiff's favor for its direct copyright infringement claim and Defendant Don Buy's a/k/a/ Huy H. Bui's ("Defendant") affirmative defenses, and in support states:

**I.      INTRODUCTION**

This Court must grant summary judgment in Plaintiff's favor because no genuine issue of material fact exists. To explain, "Defendant Don Bui concedes . . . that each of the 57 Malibu Media movies identified by Plaintiff in the Complaint was ordered by him from KickAss Torrent, and was downloaded to his computer."[1]  *See* Defendant's Response to Plaintiff's First Set of Interrogatories to Defendant, No. 5, attached hereto as Exhibit A.  Because Defendant admits using BitTorrent to download Plaintiff's copyrighted works, this lawsuit need not proceed any further.  Defendant has no grounds upon which to defend this action.  Instead, Defendant attempts to argue that although he used BitTorrent to download Plaintiff's copyrighted works, the torrent website that he used to locate and download the works (Kickass Torrents) should be

---

[1] Defendant classifies his use of BitTorrent as "ordering" files from the peer-to-peer file sharing network in an attempt to legitimize his infringing conduct.

1

held accountable and not him. That the torrent website may be contributorily or vicariously liable for copyright infringement, does not relieve Defendant of liability for his own acts of direct infringement. Indeed, Defendant may attempt to obtain contribution from the website for the statutory damages and attorneys' fees assessed against him at the conclusion of this lawsuit. However, because Defendant admits liability for his direct infringement, summary judgment in Plaintiff's favor is proper.

## II.    UNDISPUTED FACTS

The following facts are undisputed:

1.    The BitTorrent Protocol is a peer-to-peer filing sharing protocol that enables one person to distribute pieces of a file to many people. The recipients of those pieces then send the pieces they receive to each other. Once a person has all the pieces, BitTorrent assembles the pieces back together into complete computer file. *See* Declaration of Colette Field ("Field Decl."), at ¶ 26, attached hereto as Exhibit B.

2.    The nature of the BitTorrent protocol provides for continuous seeding and distributing of a file long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer will seed and distribute a movie for an extended period of time. *See* Declaration of Tobias Fieser ("Fieser Decl."), at ¶ 18, attached hereto as Exhibit C.

3.    Malibu Media is the registered owner of the copyrights set forth on Exhibit B to the Amended Complaint (CM/ECF 9-2) (the "Copyrights-in-Suit"), which cover content released for sale by Malibu Media on its subscription based website, X-Art.com. Field Decl., at ¶ 46.

4.    As set forth on Exhibit "A" to the Amended Complaint (CM/ECF 9-1), and Exhibit 1 attached to the Fieser Declaration, IPP established a TCP/IP connection with a

computer (the "Infringer's Computer") using IP address 68.60.157.141 between January 27, 2012 and February 7, 2013. Fieser Decl., ¶ 14.

5.     As set forth on Exhibits A and 1, the Infringer's Computer sent IPP pieces of computer files that correlate (as evidenced by identical cryptographic hash values) to copies of the works covered by the Copyrights-in-Suit. Collectively, these exhibits list the IP address, hash value of the works, file name, title, owner, and hit date/time for these transactions. Fieser Decl., ¶ 15.

6.     Defendant's ISP, Comcast Cable Holdings, LLC, identified Southside Nails as the internet subscriber assigned IP address 68.60.157.141 on February 7, 2013 – one day on which Defendant's IP address was logged infringing Plaintiff's copyrighted works. *See* Comcast Subpoena Response, attached hereto as Exhibit D.[2]

7.     Defendant is the owner of Southside Nails. *See* Exhibit A, Defendant's Response to Plaintiff's First Set of Interrogatories to Defendant, No. 2.

8.     Defendant is the only person who uses his computer. *Id.* at No. 4.

9.     Defendant admits using BitTorrent to download Plaintiff's copyrighted works: "Defendant Don Bui concedes for purposes of this litigation that each of the 57 Malibu Media movies identified by Plaintiff in the Complaint was ordered by him from KickAss Torrent, and was downloaded to his computer. It is Mr. Bui's position that the copying and downloading were done by KickAss Torrent, and not by him." *Id.* at No. 5.

10.     Defendant Answered Plaintiff's Interrogatories Nos. 6-12 with the same exact answer as above. *See id.*

---

[2] Out of an abundance of caution Plaintiff redacted limited content from the subpoena response immaterial to the instant motion. Plaintiff would be glad to file an un-redacted version should the Court so desire.

11. Malibu Media has *never* distributed its works through the BitTorrent protocol, nor has it authorized anyone else to download (except IPP) or distribute its works through the BitTorrent protocol. Field Decl., at ¶ 27.

12. Plaintiff's movies are made available by unknown third parties for distribution via BitTorrent through "torrent websites," which are websites that catalog torrent files. One of the most popular torrent websites is called The Pirate Bay. Another popular one is called Kickass Torrents, but there are many different torrent websites. *Id.* at ¶ 28.

13. Plaintiff has tried to get websites to stop making X-Art.com's movies available to be downloaded for free by sending hundreds and, in some cases, thousands of notices under the Digital Millennium Copyright Act ("DMCA") each month. *Id.* at ¶ 29.

14. DMCA notices have worked with some websites, but have not worked with others. *Id.* at ¶ 30.

15. Links are removed from Google but Torrent websites continue to exist and distribute Plaintiff's movies. *Id.* at ¶ 31.

16. Plaintiff has sent torrent websites DMCA notices, but the most notorious "bad actors" in this realm are located in foreign jurisdictions, so they just ignore the notices. *Id.* at ¶ 32.

17. In other cases, such as The Pirate Bay, Plaintiff has not sent a DMCA notice because The Pirate Bay has the audacity to put its responses to legal letters on its website, which are intentionally and incredibly rude to copyright owners. *Id.* at ¶ 33.

18. Notwithstanding the foregoing, Malibu Media has requested Google remove close to 20,000 infringing URLs from torrent websites. *See* Google Transparency Report, attached hereto as Exhibit E.

4

19. Malibu Media does not sue torrent websites because they are located overseas in jurisdictions that do not respect copyrights and, even if a suit was possible, it would involve a multi-million dollar expense only to have another torrent website emerge to replace it if the suit was successful. Field Decl., at ¶ 34.

20. In sum, the most significant competitive threat to the business of X-Art.com is on-line piracy, and BitTorrent. The website can only compete in a fair marketplace, and cannot compete against free versions of its works. *Id.* at ¶ 43.

## III. LEGAL STANDARD

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Pennington v. State Farm Mut. Auto. Ins. Co*, 553 F.3d 447, 450 (6th Cir. 2009) (*citing* Fed. R. Civ. P. 56). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If "the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Indeed, summary judgment is appropriate "where a trial would serve no useful purpose." *Wahl v. Vibranetics, Inc.*, 474 F.2d 971, 976 (6th Cir. 1973).

## IV.   NO RATIONAL TRIER OF FACT COULD FIND FOR DEFENDANT IN THIS CASE SO PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

### A.  All Record Evidence Proves That Defendant Infringed Plaintiff's Copyrighted Works

#### 1.   Plaintiff Owns Valid Copyrights

To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  *See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991).  Attached to the Declaration of Colette Field filed in support of the instant Motion is a true and correct copy of the copyright registrations for each of the fifty-seven (57) works infringed.  The registrations and Field Declaration prove that Malibu Media is the owner of the subject works.[3]  *See* Field Decl., at ¶ 46.  Defendant does not challenge the validity of the copyrights nor Plaintiff's ownership thereof.

#### 2.   By Using BitTorrent Defendant Copied Constituent Elements of the Works That Are Original

Defendant admits that he used BitTorrent to download each of the fifty-seven (57) copyrighted works at issue.  *See* Undisputed Facts, ¶ 9.  Although Defendant attempts to characterize his actions as "ordering" the subject works from the torrent website, Kickass Torrents, any copy of Plaintiff's movies downloaded through the BitTorrent file sharing network is an infringing copy.  As stated above, "Malibu Media has *never* . . . authorized anyone else to download (except IPP) . . . its works through the BitTorrent protocol."  Field Decl., ¶ 27. Defendant copied constituent elements of the works that are original by using BitTorrent to

---

[3] Two works on Exhibit B to Plaintiff's Amended Complaint (CM/ECF 9-2) listed the Registration Number as "PENDING."  Since filing the Amended Complaint both works were granted registration by the Copyright Office. "Seeing Double" was assigned Registration Number PA0001824840 and "Working Out Together" was assigned Registration Number PA0001824841.

obtain full copies of each of the works in violation of Plaintiff's exclusive rights under the Copyright Act. *See* 17 U.S.C. § 106 and Plaintiff's Amended Complaint, CM/ECF 9 at p. 5.

Additionally, by using BitTorrent to download the works, Defendant also simultaneously distributed the works. As stated above, "[t]he nature of the BitTorrent protocol provides for continuous seeding and distributing of a file long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer will seed and distribute a movie for an extended period of time." Undisputed Facts, ¶ 2. Because Plaintiff has "*never* distributed its works through the BitTorrent protocol, nor has it authorized anyone else to . . . distribute its works through the BitTorrent protocol[,]" Defendant infringed Plaintiff's works by both downloading *and* distributing Plaintiff's copyrighted content. Undisputed Facts, ¶ 11.

In short, "[s]ummary judgment is appropriate here because Defendant has admitted all facts necessary for Plaintiffs to prevail on their claim for copyright infringement." *Sony BMG Music Entm't v. Willis*, 2008 WL 2120837 (S.D. Ohio May 19, 2008) (*citing United States v. 2204 Barbara Lane,* 960 F.2d 126, 129-30 (11th Cir.1992); *Elektra Entertainment Group Inc. v. Brimley,* CV 205-134 (S.D.Ga. Aug. 15, 2006); *Sony Music Corp. v. Scott,* No. 03-Civ-6886 (BSJ) (S.D.N.Y. Feb. 18, 2005)).

    a.  **The Supreme Court, Circuit Courts, and This Court Hold That Using Peer-to-Peer Services to Download and Distribute Copyrighted Works Infringes Upon An Owner's Exclusive Rights Under 17 U.S.C. §106**

The Supreme Court in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 125 S.Ct. 2764 (2005), found that Grokster was liable for contributory infringement because it materially aided and induced its users to commit direct infringement via its peer-to-peer file sharing service. Similarly, the First, Second, Seventh, Eighth, Ninth and D.C. Circuits have all held that peer-to-peer infringement is actionable. *See Sony v. Tennenbaum,* 660 F.3d 487 (1st

Cir. 2011) holding in a twenty-six (26) page opinion that Tennenbaum was liable for infringement committed through a peer-to-peer network, that peer-to-peer infringement is not "fair use" nor would any other defense shield Tennenbaum's tortious conduct, and that the statutory damages clause set forth in the Copyright Act is constitutional; *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) denying an individual John Doe Defendant's motion to quash a subpoena issued to an internet service provider in response to an allegation that the John Doe Defendant infringed Arista's copyrights through a peer-to-peer file sharing network; *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) upholding a preliminary injunction because Aimster was contributorily liable for its users' direct infringements; *In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005) opining that copyright owners have a right to identify peer-to-peer file sharers through a Rule 45 subpoena because those file sharers *are* infringing the owners' copyrights; *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001) "[w]e agree that the plaintiffs have shown that Napster users infringe at least two of the copyright holders' exclusive rights: the rights of reproduction, § 106(1); and distribution, § 106(3);" and *RIAA v. Verizon Internet Services, Inc.,* 351 F.3d 1229, 1238 (D.C. Cir. 2003) repetitively acknowledging that file sharing is infringement. *See also UMG Recording, Inc. v. Alburger*, 2009 WL 3152153, *3 (E.D. PA. 2009) ("Significantly, "District courts . . . agree . . . that downloading music from the internet, without paying for it or acquiring any rights to it, is a direct violation of the Copyright Act.")

Similarly, this Court, and indeed Your Honor, have previously recognized that using BitTorrent and other peer-to-peer file sharing networks to download and distribute copyrighted content constitutes infringement. *See e.g. AF Holdings LLC v. Bossard*, 2013 WL 5550462 (W.D. Mich. 2013) (granting default judgment against defendant alleged to have used BitTorrent

to download and distribute plaintiff's copyrighted film); *Malibu Media, LLC v. John Does 1-31*, 297 F.R.D. 323, 328 (W.D. Mich. 2012) (plaintiff "articulated a sufficient factual basis" to support the assertion that defendants' IP addresses were used to download "at least a portion of Plaintiff's copyrighted Works [through BitTorrent] in violation of federal copyright law."); *LaFace Records, LLC v. Does 1-5*, 2007 WL 2867351 (W.D. Mich. 2007) (holding plaintiff adequately alleged infringement of copyrighted music through peer-to-peer file sharing network); *Arista Records, LLC v. Does 1-4*, 2007 WL 4178641 (W.D. Mich. 2007) (same).

**B. Copyright Infringement is a Strict Liability Tort**

Defendant asserts that "Mr. Bui did not believe and does not now believe that he was doing anything wrong in ordering movies from Kickass Torrent." Affirmative Defenses, CM/ECF 14, ¶ 5. In support of his position, Defendant asserts:

> 3. A friend of Mr. Bui's indicated to him that free movies could be ordered from a web site called "Kickass Torrent." The friend downloaded BitTorrent software into Mr. Bui's computer and earmarked the Kickass Torrent web site.

> 4. When Mr. Bui wanted to order a movie, he went to the Kickass Torrent web site and ordered the movie which he wanted.

> 5. Mr. Bui did not believe and does not now believe that he was doing anything wrong in ordering movies from Kickass Torrent. He does realize as a result of this suit being filed that Kickass Torrent was distributing illegally copied movies to him.

*Id.*

Notwithstanding the foregoing, "[c]opyright infringement is a strict liability offense; Plaintiff[] need not demonstrate Defendant's intent to infringe, or even knowledge of infringement, in order to prove copyright infringement." *Sony BMG Music Entm't v. Willis*, 2008 WL 2120837, at *3 (S.D. Ohio 2008). "The innocent copying defense is not a true affirmative defense. It is a limitation on damages." *Dellacasa, LLC v. John Moriarty & Associates of*

*Florida, Inc.*, 2007 WL 4117261 at n. 2 (S.D. Fla. 2007) (emphasis added). *See also Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1559 (M.D. Fla. 1993) ("Intent to infringe is not needed to find copyright infringement."). Further, "[e]ven those not versed in the law recognize the centuries-old maxim that 'ignorance of the law is no excuse.' . . . The benefits of such a presumption are manifest. To allow an ignorance of the law excuse would encourage and reward indifference to the law." *United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999).

Defendant's only defense is that he was purportedly unaware that using BitTorrent to download copies of Plaintiff's copyrighted works was illegal or, alternatively, that he was unaware that the copies of Plaintiff's works he downloaded through BitTorrent were infringing copies. Defendant also asserts that he was unaware that BitTorrent clients automatically seed (distribute) files once downloaded and that therefore he "is like an individual from whom things are stolen without his knowledge." Answer, p. 11, ¶ 10. Defendant's arguments are insufficient to create a genuine issue of material fact. Defendant need not know that his actions constituted infringement in order to be held liable.

Summary judgment is proper to defeat "the interposition of specious denials or sham defenses." 10A Fed. Prac. & Proc. Civ. § 2712 (3d ed.). Here, Defendant's denial is specious and his "defenses" cannot succeed. Accordingly, summary judgment in Plaintiff's favor should be granted.

### C. Third Party Contributory or Vicarious Liability Does Not Absolve Defendant of His Direct Infringement

"Direct infringement is infringement which stems, generally, from the 'hands-on' conduct of an individual or . . . in some cases via a computer or other device operated at the direct, purposeful initiative of such a person." 6 Patry on Copyright § 21:40. Here, there is no question that Defendant is liable for his acts of direct infringement. Defendant admits that he

10

used BitTorrent to download Plaintiff's movies. "[D]ownloading [copyrighted content] from the internet, without paying for it or acquiring any rights to it, is a direct violation of the Copyright Act." *UMG Recording, Inc. v. Alburger*, 2009 WL 3152153, *3 (E.D. PA. 2009). Therefore, Defendant admits that he infringed Plaintiff's works. Defendant's only defense rests on the assertion that Kickass Torrents, the website that he used to obtain Plaintiff's movies, should be held liable for making available to him and allowing him to obtain infringing copies of Plaintiff's works. Defendant argues that "Kickass Torrent made infringing copies of the movies Mr. Bui ordered, not Mr. Bui." *See* Answer (CM/ECF 14), p. 11, ¶ 8.

"Although '[t]he Copyright Act does not expressly render anyone liable for infringement committed by another,' the[] doctrines of secondary liability emerged from common law principles and are well established in the law." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005) (citations omitted). "Secondary liability results from acts not done by or on behalf of a defendant, but from an act of direct infringement committed by another whose relationship with the defendant is deemed sufficient to justify imposing derivative liability on the defendant." 6 Patry on Copyright § 21:40. The two main theories of secondary liability are contributory infringement and vicarious infringement. "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it[.]" *Grokster, supra* (citations omitted).

Although Kickass Torrent may *also* be liable for copyright infringement under the doctrines of contributory or vicarious infringement or both, that fact does not absolve Defendant of liability for his own infringing acts. Copyright infringement "[l]iability may be selectively prosecuted . . . ." 6 Patry on Copyright § 21:38. "Anyone who violates any of the exclusive

rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright . . . ." 17 U.S.C. § 501(a). Thus, Plaintiff is entitled to sue direct infringers or secondarily liable entities or both. However, because of the problems with attempting to sue torrent websites, Plaintiff has no choice but to pursue individual BitTorrent infringers. *See* Field Decl., at ¶¶ 28-34.

### D. Plaintiff Has No Other Way to Protect Its Copyrights Against Online Infringers

The last paragraph of Defendant's Answer asserts that "Plaintiff knows that Kickass Torrent is the infringer in this case. Rather than sue Kickass Torrent and companies like it, Plaintiff prefers to attempt to coerce settlements out of people like Defendant, who is an innocent victim of infringement by others." Answer, p. 12, ¶ 15. Aside from being erroneous and having no bearing on the instant case, such assertion downplays the harm suffered by Plaintiff at the hands of BitTorrent infringers. "[T]he most significant competitive threat to the business of X-Art.com is on-line piracy, and BitTorrent." Undisputed Facts, ¶ 20 (emphasis added). Indeed, the Declaration of Colette Field explains why pursuing individual BitTorrent infringers is the only feasible option – neither torrent websites nor the entities that create BitTorrent clients can be pursued. That being the case, Plaintiff does everything within its power to sue only the worst of the worst infringers. Here, Defendant stole fifty-seven (57) individual works. By using BitTorrent to steal the movies, Defendant also enabled countless others to steal those works by becoming an additional seed for the films and distributing them to other infringers. Plaintiff is entitled to protect its copyrights by filing lawsuits against infringers who use BitTorrent to steal and distribute its works. Because Defendant admits he used BitTorrent to download Plaintiff's works, and therefore also distributed them, summary judgment in Plaintiff's favor must be granted.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant Plaintiff's Motion for Summary Judgment.

Dated:  May 14, 2014.

Respectfully submitted,

NICOLETTI LAW, PLC

By:      /s/ *Paul J. Nicoletti* _____
Paul J. Nicoletti, Esq. (P44419)
33717 Woodward Avenue, #433
Birmingham, MI 48009
Tel:  (248) 203-7800
E-Fax: (248) 928-7051
Email:  pauljnicoletti@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ *Paul J. Nicoletti* _____

13