UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC )
)
    Plaintiff, ) Civil Action No. 1:13-cv-00162-RJJ
)
v. )
)
DON BUI a/k/a HUY H. BUI )
)
    Defendant. )
)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGEMENT**

**DEFENDANT'S BRIEF IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

There are genuine issues of fact in this case which prevent the grant of Summary Judgment. In order to be liable for copyright infringement, to the extent relevant in this case, one must "reproduce the copyrighted work in copies …," and/or "distribute copies …." 17 USC § 106(1) and (3). In the alternative, "[o]ne who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

Don Bui did not reproduce the copyrighted work in copies. Mr. Bui had no knowledge that his computer was being used by KickAss Torrent to distribute small pieces of infringing material to others. Plaintiff asks the Court to assume copyright infringement as a matter of law, without ever addressing the facts regarding the manner in which the BitTorrent protocol works. While it is true that an unauthorized copy of the work was created on Defendant's computer, it

1

was created by KickAss Torrent through the BitTorrent protocol. Don Bui is nothing more than the person who goes to a store and unknowingly acquires a pirated CD. Someone else made the unauthorized copy and provided it to him. That person has not committed copyright infringement.

In support of his position, Don Bui presents the Declaration testimony of software experts Jason Smith and Doug Kelly describing the manner in which the BitTorrent protocol works and the manner in which KickAss Torrent creates copies of pirated works on user computers. Don Bui submits his Declaration concerning his lack of knowledge of any wrongdoing. Jason Smith additionally points out in his Declaration representations made by KickAss Torrent on its website to the effect that the works which it is offering are not unauthorized infringing works, and assuring removal of any unauthorized infringing works upon receipt of notice.

## II. STATEMENT OF FACTS

### A. How BitTorrent Works

A general description of how the BitTorrent software works is contained in the "How Stuff Works" web article written by Carmen Carmack (Ex. B attached). Unlike some other peer-to-peer downloading methods, BitTorrent is a protocol that offloads file tracking work to a central server, called a **tracker**. In this case, the "tracker" is KickAss Torrent. In a general way, the protocol works as follows:

- A consumer opens the Tracker's Web page and clicks on the movie he or she wants.
- The **tracker** identifies other computers running BitTorrent that have the complete file (**seed** computers) and those with a portion of the file (consumers that are usually in the process of downloading the file). These computers are referred to as "the swarm."
- The tracker, in this case KickAss Torrent, helps the consumer's software trade pieces of the movie with other computers in the swarm. The consumer's computer receives multiple pieces of the file simultaneously.

2

- If the consumer continues to run the BitTorrent client software after his or her download is complete, others can receive BitTorrent files (movies) from his or her computer. This can and often does occur without the knowledge of the consumer. (Smith Dec. ¶ 5).

KickAss Torrent began by using BitTorrent software to create a database on a KickAss Torrent server. KickAss Torrent uses this database to store movie titles, and the locations, that is the IP addresses, of every computer which they know has a copy of each particular movie. They likely initially filled this database with movie titles and locations of movies physically located on the computers of their own investors, friends, relatives, acquaintances or the like. Their BitTorrent software creates a unique cryptographic code for each movie. This code is referred to as a "file hash", which acts as a digital fingerprint identifying the movie. Their BitTorrent software also breaks the movie into many small pieces called bits. Each bit of the movie is assigned a unique cryptographic code, referred to as a "bit hash." The "bit hash" acts as that bit's unique digital fingerprint. Each bit hash identifies not only a piece of the movie, but also the IP address of every computer which has that bit hash on it. (Smith Dec. ¶ 6)

KickAss Torrent created a website which lists and promotes the availability of the movie titles contained in their database. The first time a consumer clicks on the title of a movie, KickAss Torrent instructs one to download the KickAss Torrent specified BitTorrent software to the consumer's computer. The software either creates or identifies a movie file folder on the consumer's computer. The consumer is typically instructed to click "OK" or its equivalent to set up the folder. (Smith Dec. ¶ 7).

The KickAss Torrent software identifies each IP address location which is currently "on-line," and which has a copy of the requested movie. It provides that information and the file hash for that movie to the consumer's computer, and instructs the KickAss Torrent downloaded software to go to those IP addresses and collect one or more bits of the movie from each of

3

those computers and download it to the consumer's computer. The BitTorrent software then assembles those bits into a copy of the movie on the consumer's computer. (Smith Dec. ¶ 8).

Many customers who have ordered movies from KickAss Torrent have no idea how this process works. Even worse, they have no idea that KickAss Torrent has added their computer IP address to the KickAss Torrent database, as being source for that movie. They thus have no idea that any time their computer is "on line," KickAss Torrent is making it possible for other consumers to download bits of any movie from their computer to another consumer's computer. (Smith Dec. ¶ 9)

No copy of the movie could be made without the provider, KickAss Torrent. In my opinion, the customer who orders a movie from a BitTorrent provider is no different from a customer who goes into a music store and purchases a DVD of a pirated movie. Most such customers have no idea that the DVD they have purchased is an illegal, infringing copy. (Smith Dec. ¶ 10) The customer's computer is nothing more than the bag into which a store, in this case KickAss Torrent, places a DVD of a pirated copy of the movie. (Smith Dec. ¶ 12).

While there are likely some computer savvy customers who know they are obtaining a pirated movie from a BitTorrent provider, there are many users who have no idea that the movie they are ordering is pirated, they have no idea how the provider is using their computer and the computers of numerous third parties to assemble the movie, and they have no idea that their own computer is used from time to time to provide movie bits to others on whose computers the movies are assembled. (*Id.*)

Douglas Kelly is in agreement with the above facts (Kelly Dec. ¶¶ 4-11). Both Jason Smith and Douglas Kelly are of the opinion that it is the BitTorrent provider, in this case KickAss Torrent, who makes the copy on the customer's computer, not the unwitting customer. (Smith & Kelly, ¶¶ 13 &12).

4

### B. Don Bui Had No Knowledge of Infringement

Defendant Don Bui was born and educated in Viet Nam. He does not have a college education (Bui Dec. ¶ 2). He came to the United States in December of 1992, and has worked as a truck driver, and as a factory worker for Herman Miller, before opening a nail salon in Holland Michigan in 1998 (Bui Dec. ¶¶ 4-7).

Mr. Bui had no exposure to computer devices in his education, his work or his nail salon for the first seven years he was in business. He had no exposure to computers until 2005, when he bought his first one. He has not taken any courses or classes on how to use computers or software. The use he has made is very limited, namely to order supplies from amazon.com, to do banking, for emails, and occasionally for preparing documents (Bui Dec. ¶¶ 8-10).

In approximately 2007, a friend set up his computer so he could order movies from KickAss Torrent. He was never informed that anyone would object to his ordering movies from this organization, or find anything wrong with his doing so. He never heard of BitTorrent until he was sued, and had no understanding of how his computer was being used by KickAss Torrent. When he received the complaint, he contacted attorney Nicoletti and informed him that he would remove all copies of movies from his computer, which he has done.

### III. DEFENDANT'S DISPUTE WITH PLAINTIFF'S "UNDISPUTED" FACTS

Defendant disputes a number of Plaintiff's "undisputed" facts. Defendant objects to expert testimony by Declarants who have not been qualified as experts and/or who never submitted Expert Reports as required by FRCP Rule 26(a)(2). Defendant also objects to Plaintiff's use of evidence obtained by invasion of Defendant's privacy.

**Plaintiff's Alleged Undisputed Fact 1:**

1. The BitTorrent Protocol is a peer-to-peer filing sharing protocol that enables one person to distribute pieces of a file to many people. The recipients of those pieces ten send

the pieces they receive to each other. Once a person has all the pieces, BitTorrent assembles the pieces back together into complete computer file. *See* Declaration of Collete Field ("Field Decl."), at ¶ 26, attached hereto as Exhibit B.

This Statement is an inaccurate description of how the BitTorrent Protocol operates. BitTorrent allows a "tracker" or "provider" to locate every computer which contains a complete copy of any given movie. The tracker, in this case KickAss Torrent, identifies the movie with a "file hash," and uses the BitTorrent software to break the movie into many small pieces called "bits." When a consumer like Don Bui orders a movie, KickAss Torrent then instructs the consumer's computer to go to those IP addresses which have copies of the movie and collect one or more bits of the movie from each of those computers and download those bits to the consumer's computer, where they are then assembled into a copy of the movie on that consumer's computer. (Smith Dec. ¶¶ 6-8, Kelly Dec. ¶¶ 6-7).

In addition, Defendant objects to the testimony of Collete Field as to how the BitTorrent software operates, as she has not been qualified as an expert in this case. Collete Field is a real estate agent and an owner of Plaintiff, Malibu Media. Nor was any Expert Report filed for Collete Field, as required by FRCP Rule 26(a)(2). Her testimony as an expert should not be permitted.

**Plaintiff's Alleged Undisputed Fact 2:**

2. The nature of the BitTorrent protocol provides for continuous seeding and distributing of a file long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer will seed and distribute a movie for an extended period of time. See Declaration of Tobias Fieser ("Fieser Dec."), at ¶18, attached hereto as Exhibit C.

As with Plaintiff's alleged undisputed Fact 1, Fact 2 inaccurately describes the BitTorrent protocol. The BitTorrent protocol does not provide for "distributing of a file." Instead, it makes it possible for KickAss Torrent to download codes to a consumer's computer which cause other consumer's computers to distribute only small pieces or "bits" of a file from the computers of various consumers. (Declarations of Smith and Kelly, *supra*).

Further, Tobias Fieser, the witness providing the Statement in paragraph 2, has not filed an expert report as required by FRCP Rule 26(a)(2). His testimony as an expert should not be permitted.

**Plaintiff's Alleged Undisputed Facts 9 and 10**

9. Defendant admits using BitTorrent to download Plaintiff's copyrighted works: "Defendant Don Bui concedes for purposes of this litigation that each of the 57 Malibu Media movies identified by Plaintiff in the Complaint was ordered by him from KickAss Torrent, and was downloaded to his computer. It is Mr. Bui's position that the copying and downloading were done by KickAss Torrent, and not by him." *Id.* at No. 5.

10. Defendant Answered Plaintiff's Interrogatories Nos. 6-12 with the same exact answer as above. *See Id.*

Plaintiff states in Facts 9 and 10 that "Defendant admits using BitTorrent to download Plaintiff's copyrighted works. That is not true. KickAss Torrent downloaded Plaintiff's copyrighted works to Defendant's computer. Defendant did not download those works.

Defendant does agree that it is uncontested that, as stated by Defendant in Admissions:

> "Defendant Don Bui concedes for purposes of this litigation that each of the 57 Malibu Media movies identified by Plaintiff in the Complaint was ordered by him from KickAss Torrent, and was downloaded to his computer. It is Mr. Bui's position that the copying and downloading were done by KickAss Torrent, and not by him."

**Plaintiff's Alleged Undisputed Fact 19**

19. Malibu Media does not sue torrent websites because they are located overseas in jurisdictions that do not respect copyrights and, even if a suit was possible, it would involve a multi-million dollar expense only to have another torrent website emerge to replace it if the suit was successful. Field Dec. at ¶ 34.

First, Plaintiff offers no evidence whatsoever that KickAss Torrent is located overseas.

Secondly, this statement is inaccurate on its face. KickAss Torrent is doing business in the United States through its website. It is amenable to jurisdiction in the United States and the Federal Rules of Civil Procedure provide vehicles for service of process on foreign corporations. (See FRCP 4(f) and 4(l)(2). Nor is the fact that significant expense might be involved in litigation excuse to allow Plaintiff to invade the privacy of and harass individuals like Don Bui who have done nothing more than unwittingly order a copy of a movie which was then copied to its computer by KickAss Torrent in the same way in which a store loads an unauthorized CD into a customer's bag.

Third, Plaintiff chooses to ignore the fact that KickAss torrent states on their website that they will remove any illegal copies of movies if asked to do so by the copyright owner (Ex. F to Smith Dec.):

> We are interested in keeping the site online and filled with content, but we are also obliged to remove content if we are contacted directly by the copyright owner.

Clearly, Malibu Media has not done so.

Malibu Media prefers to use KickAss Torrent as a "honey pot," to trap unwary consumers like Don Bui. They prefer to try to scare the Don Buis of the world into paying a large sum of money to avoid the rigors and exposure of a law suit. Malibu Media prefers to cast a wide net by going after what it calls offenders, and is not interested in getting the content

8

removed so it doesn't happen again.

**Facts With Are Not Disputed**

Defendant accepts for purposes of this litigation only the following Statements of Undisputed Facts: 3-8, 11-18 and 20.

## IV. LEGAL STANDARD

Defendant agrees with Plaintiff's statement of law. There are genuine issues of material facts in this case.

## V. WHETHER IT IS KICKASS TORRENT OR DON BUI WHO MAKES OR DISTRIBUTES THE COPY IS AN ISSUE OF FACT, NOT AN ISSUE OF LAW

### A. *A Computer Cannot Make a Copy of a BitTorrent Movie without Instructions from KickAss Torrent*

Plaintiff's entire case is based on the proposition that as a matter of law, BitTorrent software operates exactly like the peer-to-peer software litigated in *MGM v. Grokster*, 545 U.S. 913, 125 S.Ct. 2764 (2005). Plaintiff's premise is that BitTorrent software makes copyright infringers out of the customer, as a matter of law. That is not the case.

In order to be directly liable for copyright infringement, to the extent relevant in this case, one must "reproduce the copyrighted work in copies …," and/or "distribute copies …" without authorization. 17 USC § 106(1) and (3). While it is agreed that unauthorized copies of movies have been reproduced on Don Bui's computer, there is an issue of fact as to whether those copies were made by KickAss Torrent, from whom Mr. Bui ordered the movies, or by Don Bui himself. The answer to that question requires a factual understanding of how the BitTorrent protocol works.

There are fundamental factual differences between the peer-to-peer software involved in *Grokster,* supra, and the BitTorrent software involved in this case. The peer-to-peer software

9

involved in *Grokster* allows any user to reach out to any other user and make a copy on his or her computer of anything stored in the other user's computer:

> "A user who downloads and installs either software [the peer-to-peer software involved in *Grokster*] possesses the protocol to send requests for files directly to the computers of others using software compatible with FastTrack or Gnutella. …If the file is found, the supernode discloses its location to the computer requesting it, and the requesting user can download the file directly from the computer located. The copied file is placed in a designated sharing folder on the requesting user's computer, where it is available for other users to download in turn, along with any other files in that folder. …As this description indicates, *Grokster* and streamcast use no servers to intercept the content of the search requests or to mediate the file transfers conducted by users of the software, there being no central point through which the substance of the communications passes in either direction." *MGM v. Grokster, supra* at p. 921.

Thus in using the *Grokster* type peer-to-peer software, the user reaches out directly to another user's computer, finds the unauthorized copy of a copyrighted work, and makes a copy of it on his own computer.

In contrast, the customer using BitTorrent cannot simply go to another computer and make a copy of a document on that other computer. In the BitTorrent software, a work can only be copied onto a user's computer through instructions to that computer from a tracker/provider, such as KickAss Torrent. And whereas the *Grokster*-type peer-to-peer network does not utilize a central server, BitTorrent does. BitTorrent is a protocol that offloads file tracking work to a central server called a "tracker." (Smith Dec. ¶ 5).

KickAss Torrent identifies all of its movies with a so-called "file hash." KickAss Torrent breaks the movie into many small pieces called "bits." Each bit of the movie is assigned a unique cryptographic code, referred to as a "bit hash." The bit hash acts as that bits unique digital fingerprint. KickAss Torrent causes each bit hash not only to identify a piece of the movie, but also the IP address of every computer which has that bit hash on it (Smith Dec. ¶ 6).

When a consumer orders a movie from KickAss Torrent, KickAss Torrent has to provide the file hash and bit hash information for the movie to the consumer's computer, and that information instructs the consumer's computer to go to the IP addresses identified by KickAss Torrent and collect one or more bits of the movie from each of those computers. Using the file hash and bit hash information, the BitTorrent software than assembles those bits into a copy of the movie on the consumer's computer (Smith Dec. ¶ 8).

No copy of the movie ordered can be made without the provider, KickAss Torrent. The customer who orders the movie from a BitTorrent provider is no different from a customer who goes into a music store and purchases a DVD of a pirated movie. Most such customers have no idea that the DVD they have purchased is an illegal, infringing copy (Smith Dec. ¶ 10). The customer's computer is nothing more than the bag into which a store, in this case KickAss Torrent, places a DVD of a pirated copy of a movie (Smith Dec. ¶ 12).

**B.**  ***The Fact That KickAss Torrent Makes the Copy Is Evidenced By the Fact That It Can Make the Copy Unavailable***

KickAss torrent states on their website that they will remove any illegal copies of movies if asked to do so by the copyright owner (Ex. F to Smith Dec.):

> We are interested in keeping the site online and filled with content, but we are also obliged to remove content if we are contacted directly by the copyright owner.

Thus, KickAss Torrent can make a movie unavailable, and will do so if asked by the copyright owner. The fact that KickAss Torrent can make the movie unavailable is evidence that it controls the download and make the copy, through their bit-file and bit-hash instructions to the customer's computer. BitTorrent isn't like the *Grokster*-type peer-to-peer system, where a user can simply keep going back to a particular computer to download a work, regardless of what

11

*Grokster* might do. BitTorrent requires an active tracker/provider like KickAss Torrent to make copies of the movie ordered, on the user's computer.

### C. *One Cannot Be Accused Of Distributing a Movie If They Do Not Know It Is Happening*

Nor as a matter of fact, can Defendant Don Bui be accused of "distributing" unauthorized copies of Plaintiff's movie. First, one is not distributing copies of anything, if one does not even know that his or her computer is being used to do so. Don Bui cannot be held liable for an act which someone else is doing with his computer without his knowledge. Don Bui had no idea whatsoever that any of this was going on on his computer (Bui Dec. ¶ 14).

Secondly, in each instance of distribution, that which was distributed from Don Bui's computer by KickAss Torrent was only a small bit of the overall work from which it was taken. This gives rise to the "de minimis" defense against copyright infringement. *De minimis* copying is a taking that "is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees* 794 F.2d 432, n. 2 (9th Cir. 1986) citing *Elsmere Music, Inc. v. National Broadcasting Co.,* 482 F. Supp. 741, 744 (S.D.N.Y.). Whether copied elements of a work are of sufficient importance to the works as a whole to render a defendant guilty of infringement, is a question of fact for the jury. *Merchant Transaction Systems, Inc. v. Nelcela, Inc.*, 2009 WL 723001, 18 (D. Ariz. 2009).

Plaintiff cites a number of cases which are supposed to bolster its position that the use of BitTorrent software automatically makes a computer user guilty of copyright infringement. However, none of the cases cited support that proposition.

All but two of the cases cited by Plaintiff involve the use of peer-to-peer software of the type addressed in the *Grokster* case, *supra*. As discussed above, there are important factual differences between the *Grokster*-type peer-to-peer software and BitTorrent software. None of

these cases support the proposition that the use of BitTorrent software to download unauthorized copies of a movie makes the user guilty of reproducing or distributing the movies as a matter of law.

Nor do the Western District of Michigan cases cited at the bottom of page 8 and top of page 9 of Plaintiff's Brief support the proposition that a computer user's use of BitTorrent software makes them an infringer "as a matter of law." Not one of these cases involves a factual determination that a defendant customer such as Don Bui reproduced or distributed an unauthorized copy of a copyrighted work through the use of BitTorrent software. In *AF Holdings v. Bossard*, 2013 W.L. 5550462 (W.D. Mich. 2013), default judgment was entered against a defendant who never answered the complaint. The Court, of course, accepted the pleadings of the plaintiff. The factual issue of whether or not the defendant made or distributed infringing copies by using BitTorrent software was never litigated.

The same is true of *Malibu Media LLC v. John Does* 1-31, 297 FRD 323, 328 (W.D. Mich. 2012). That case involved a decision on ex parte discovery motion in which plaintiff sought to serve third party subpoenas. The factual differences between BitTorrent and other peer-to-peer software was not litigated.

The *LaFace Records* case, 2007 W.L. 2867351 and the *Arista Records* case, 2007 W.L. 4178641 also involved decisions on ex parte discovery motions, but neither indicates that BitTorrent software was even involved in those cases.

Accordingly, Plaintiff's assertion that Don Bui is guilty of reproducing and/or distributing infringing copies of Plaintiff's movies as a matter of law is not supported in any way. There are factual differences between BitTorrent software and the type of peer-to-peer software involved in the *Grokster* and other similar cases which require understanding and

determination in this case. Both parties have requested jury trial in this matter, and these factual issues are for a jury to decide.

## VI. THERE IS NO CONTRIBUTORY INFRINGEMENT IN THIS CASE

"[O]ne who, with knowledge of the infringing activity, induces, causes, or materially contributes the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). It is clear from Mr. Bui's Declaration submitted herewith that he had no knowledge that any type of copyright infringement was taking place in this matter (Bui Dec. in its entirety).

Plaintiff argues and cites cases for the proposition that, "copyright infringement is a strict liability tort." That misses the issue of the case. The issue of the case is not whether or not Mr. Bui would be liable for copyright infringement notwithstanding his lack of knowledge of the infringement, but rather whether Mr. Bui did in fact reproduce or distribute a copy of the infringing work. Defendant contends that KickAss Torrent made the copies on Mr. Bui's computer. Resolution of that issue requires a factual determination by the jury.

Plaintiff makes arguments and cites cases for the proposition that, "third party contributory or vicarious liability does not absolve defendant of his direct infringement." Again, this erroneously assumes direct infringement by Mr. Bui as a matter of law. The issue is whether Defendant is guilty of direct infringement requires a factual determination by the jury in this case. The only "contributory infringement" issue involved in this case is whether or not Don Bui is guilty of contributory infringement. As noted in the case law discussed above, that does require knowledge on Mr. Bui's behalf, and his testimony in his Declaration establishes that he did not in fact have such knowledge. At a minimum, this raises an issue of fact for the jury to determine.

## VII. PLAINTIFF COULD, BUT WON'T, DEAL WITH KICKASS TORRENT

Plaintiff argues that it "has no other way to protect its copyrights against online infringers," except to sue individuals like Don Bui. That is not true. KickAss Torrent states on its website that they will remove any illegal copies of movies if asked to do so by the copyright owner (Ex. F to Smith Dec.).

> We are interested in keeping the site online and filled with content, but we are also obliged to remove content if we are contacted directly by the copyright owner.

Plaintiff offers absolutely no testimony to the effect that it has contacted KickAss Torrent. Defendant asked Plaintiff during discovery for documents relating to any contact with KickAss Torrent, and Plaintiff refused to answer.

> 10. Produce all documents, electronic or oral communications showing contact of any type to Plaintiff, and/or Plaintiff's investigators of or with KickAss Torrent.
>
> **Response to Interrogatory No. 10:** Plaintiff objects on the basis that this request seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff further objects on the basis that this request is vague insofar as the meaning of "contact" is undefined and unclear. Plaintiff objects on the basis that this request is unduly burdensome. Indeed, Plaintiff sends hundreds, if not thousands, of DMCA Take Down notices a month to entities that infringe Plaintiff copyrighted works. As such, culling every DMCA notice and determining if any were sent to KickAss Torrent would be labor intensive and unduly burdensome.

Plaintiff asserts that it cannot sue KickAss Torrent because it is "located overseas." (Alleged Undisputed Fact 19). First, there is no evidence that that is the case. Secondly, this statement is inaccurate on its face. KickAss Torrent is doing business in the United States through its website. It is amenable to jurisdiction in the United States and the Federal Rules of

Civil Procedure provide vehicles for service of process on foreign corporations. (See FRCP 4(f) and 4(l)(2). Nor is the fact that significant expense might be involved in litigation excuse to allow Plaintiff to invade the privacy of and harass individuals like Don Bui who have done nothing more than unwittingly order a movie which was then copied to its computer by KickAss Torrent in the same way in which a store loads an unauthorized CD into a customer's bag.

Malibu Media does not ask KickAss Torrent to refrain from copying its movies to user computers. Malibu Media does not sue KickAss Torrent. Instead, Malibu Media prefers to use KickAss Torrent as a "honey pot," to trap unwary consumers like Don Bui. They prefer to try to scare the Don Buis of the world into paying a large sum of money to avoid the rigors and exposure of a law suit. Malibu Media prefers to cast a wide net by going after what it calls offenders, and is not interested in getting the content removed so it doesn't happen again.

The fact is, Malibu Media is a "copyright troll." It seeks to take advantage of the generous statutory damage allowance imposed by the Copyright Laws, which was intended to punish those who were reproducing and distributing hundreds or thousands of pirated works. These statutory damage provisions were not originally intended to impose damages of $750 or more against a poor sap who downloads a $20 movie. The advent of the computer age however, allows copyright trolls to harass into bankruptcy individuals, many of whom like Don Bui are doing nothing more than was done by a music store customer who unwittingly purchased a pirated CD.

## VIII. CONCLUSION

The use of BitTorrent software by a consumer ordering movies does not make the consumer guilty of copyright infringement as a matter of law. There are important factual distinctions between BitTorrent software and the kind of peer-to-peer software involved in

*Grokster, supra*, the use of which by an individual consumer was determined through litigation to constitute infringement as a matter of fact. Nor are there any facts which would subject Don Bui to liability as a contributory infringer. Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,

MITCHELL INTELLECTUAL PROPERTY LAW, PLLC

By: _____/s/ James A. Mitchell_____
James A. Mitchell (P17832)
1595 Galbraith Avenue SE
Grand Rapids, MI 49546
Tel: 616/965-2430
Cell: 616/540-2677
Email: jamitchell@mitchelliplaw.com

Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties though this system. In addition, a courtesy copy of the foregoing document has been mailed via First Class to the Court.

By: _____/s/ James A. Mitchell_____
James A. Mitchell