UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALIBU MEDIA, LLC,

       Plaintiff,

v.

DON BUI, also known as HUY H. BUI,

       Defendant.
_____/

CASE NO. 1:13-CV-162

HON. ROBERT J. JONKER

## ORDER

     This is a copyright infringement suit. Plaintiff Malibu Media owns the copyright on 57 movies, complete copies of which wound up on Defendant Bui's computer.  Bui's copies were not licensed or otherwise authorized by the copyright holder.  Bui acquired his copies by using a BitTorrent computer program.  The program connected Bui to a swarm of other BitTorrent users who together fragment and track a seed file using BitTorrent technology.  The technology breaks the file into small digital packages, and then reconstitutes the fragments into a complete, unauthorized copy for individual participants in the swarm.  The parties describe the BitTorrent process in slightly different terms, but there is no genuine dispute about the way the technology works in general, or in this case.  Plaintiff moves for summary judgment on liability for copyright infringement. Defendant opposes summary judgment on the theory that any unauthorized copy was made by KickAss Torrent alone, not by Defendant Bui.  The Court concludes that Plaintiff is entitled to summary judgment on this record.

Plaintiff's copyright infringement claim requires proof of just two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Defendant does not contest the first element. Plaintiff's theory on the second element is simple: Defendant had on his computer 57 unauthorized copies of Plaintiff's copyrighted works. Defendant participated in getting those files on his computer by installing and using BitTorrent technology. BitTorrent allowed Defendant to create the unauthorized copy by combining with a swarm of other BitTorrent users to fragment an original unauthorized copy into small digital packages; to transmit those digital packages through the swarm of users; and then to re-assemble the small packages into the complete, unauthorized copies found on his computer. In so doing, Defendant participated directly in creating an unauthorized copy for himself in a functionally indistinguishable way from the infringers in peer-to-peer infringement cases. *See, e.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). This Court agrees.

Defendant has some quarrels with the details of how BitTorrent works, but nothing that the Court sees as a fundamental or material issue of fact. Even as Defendant describes the facts, using BitTorrent technology, he ultimately winds up with 57 unauthorized copies of Plaintiff's works – copies that did not exist until Defendant himself engaged the technology to create new and unauthorized copies with a swarm of other users. True enough, the process is not identical to the peer-to-peer file sharing program in *Grokster*. It is, however, functionally indistinguishable from the perspective of both the copyright holder and the ultimate consumer of the infringed work. In both situations, the end user participates in creating a new and unauthorized digital copy of a protected work. It makes no difference from a copyright perspective whether the infringing copy is

created in a single wholesale file transfer using a peer-to-peer protocol; or in a swarm of fragmented transfers that are eventually reassembled into the new infringing copy. Contrary to Defendant's claim, this is not a situation akin to a consumer walking into a store and unwittingly purchasing a pirated DVD. Here, as in *Grokster*, the Defendant's use of software creates for himself a new and unauthorized copy of a protected work.

The Supreme Court's recent decision in *American Broadcasting Companies, Inc. v. Aereo, Inc.*, __ S. Ct.__, No. 13-461, 2014 WL 2865585 (June 25, 2014), is instructive even though it is dealing with a different aspect of copyright infringement. In *Aereo*, television broadcasters sued to prevent the unauthorized copying and transmission of copyrighted television shows by Aereo to its subscribers. Everyone agreed that use of a single antenna to capture the broadcast signal and then transmit it to paid subscribers would have violated the Copyright Act. Aereo argued, however, that it was using thousands of tiny antennae, each one dedicated at any given time to a single subscriber, and that it was in this way avoiding direct copyright infringement. Six Justices agreed that this technological distinction, though real, was immaterial to liability for direct copyright infringement. *Aereo*, 2014 WL 2865585, at *11 ("[W]e conclude that when an entity communicates the same contemporaneously perceptible images and sounds to multiple people, it transmits a performance to them regardless of the number of discrete communications it makes."). Even the three dissenting Justices agreed that Aereo should not be able to do what it does; they simply believed the proper pathway to liability was contributory infringement rather than direct infringement. The lesson for this case is that the ever-changing technological means of producing unauthorized copies of protected works must not obscure the basic protection of the Copyright Act for copyright holders. *See id.* at * 13 ("Insofar as there are differences [between Aereo's practices and those of cable

television systems Congress brought within the scope of the Copyright Act], those differences concern not the nature of the service Aereo provides so much as the technological manner in which it provides the service.  We conclude that those differences are not adequate to place Aereo's activities outside the scope of the Act.").

Defendant's other objection to summary judgment is that Defendant did not realize or understand how the technology worked, and did not intend to infringe.  These objections are unavailing.  Copyright infringement is a strict liability wrong; Defendant's intention is beside the point.  *See King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006) ("Liability for copyright infringement does not turn on the infringer's mental state because 'a general claim for copyright infringement is fundamentally one founded on strict liability.'") (quoting *Bridgeport Music Inc. v. 11C Music*, 154 F. Supp. 2d 1330, 1335 (M.D. Tenn. 2001)).  Similarly, whether Defendant understood the details of how BitTorrent works is beside the point.  As long as Defendant engaged in a volitional act that led to creation of the unauthorized copy, he is responsible for it despite a lack of detailed understanding.  *Id.*; *cf. F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952) (finding Woolworth liable for direct copyright infringement even though Woolworth was unaware that product it was selling infringed another's copyright).  Here, Defendant's action was using BitTorrent, which set in motion the sequence of digital events that created the 57 new and unauthorized copies of Plaintiff's works on Defendant's computer.

For these reasons, the Court concludes that summary judgment in favor of Plaintiff Malibu Media is appropriate.

**ACCORDINGLY, IT IS ORDERED**:

     1.     Plaintiff Malibu Media, Inc.'s Motion for Summary Judgment (docket # 31) is **GRANTED**.  Defendant is liable for copyright infringement.  Damages remain in dispute and will be resolved by trial, if necessary.

     2.     Plaintiff's Motion to Strike (docket # 37) is **DISMISSED AS MOOT**.


Dated:      July 21, 2014                           /s/ Robert J. Jonker  
                                                         ROBERT J. JONKER  
                                                         UNITED STATES DISTRICT JUDGE